STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

MARTIS ANN ALEX (SBN 77903)
malex@labaton.com
DANIEL R. LEATHERS (*pro hac vice*)
dleathers@labaton.com
BRIAN R. MORRISON (*pro hac vice*)
bmorrison@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MICHELLE RODRIGUEZ and JOHNNY HERNANDEZ, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>Defendant. | No. 2:15-cv-09203-AB-MRW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT AMERICAN HONDA MOTOR CO, INC.'S MOTION TO DISMISS**<br><br>Date:    June 27, 2016<br>Time:    10:00 a.m.<br>Place:   Courtroom 4<br>Judge:   Hon. André Birotte, Jr. |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................ 1

II.   BACKGROUND ................................................................. 3

III.  ARGUMENT ...................................................................... 6

    A.   Legal Standard ......................................................... 6

    B.   Honda Cannot Skirt Page Limits by Incorporating Other Defendants' Arguments by Reference ....................................... 7

    C.   Plaintiff's Claims Do Not Conflict with Any Safety Standards ............... 7

    D.   Plaintiff's Request for Injunctive Relief Is Not Preempted ..................... 12

    E.   Honda's Remaining Arguments Are Unavailing ......................... 13

        1.   Plaintiff alleges a sufficient "Injury-in-Fact" to confer Article III standing ............................................................. 13

        2.   Honda had a duty to disclose the lack of Auto-Off and associated safety risks and failed to do so. .................................. 17

            a.   Honda had a duty to disclose the Defect because it posed an unreasonable safety risk. ..................................... 18

            b.   Honda also had a duty to disclose the lack of Auto-Off based on its exclusive knowledge (*i.e.*, Honda was in a superior position to know about the Defect and related safety risks). ................................ 19

        3.   Plaintiff states a claim for unjust enrichment under California law. .................................................................. 24

        4.   The "economic loss rule" does not bar Plaintiff's tort claims for fraudulent concealment. ............................................ 24

IV.  CONCLUSION .................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014).................................................................. 22

*Alvarez v. Chevron Corp.*,
  656 F.3d 925 (9th Cir. 2011) ..................................................................................... 9

*Apodaca v. Whirlpool Corp.*,
  2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ........................................................ 19

*Aquair Ventures LLC v. Gulf Stream Coach Inc.*,
  2008 WL 4104218 (N.D. Cal. Sept. 4, 2008)........................................................ 17

*Asghari v. Volkswagen Grp. of Am., Inc.*,
  42 F. Supp. 3d 1306 (C.D. Cal. 2013)........................................................ 18, 22, 23

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ................................................................................... 24

*Barnes v. Sea Hawaii Rafting, LLC*,
  2015 WL 9459893 (D. Haw. Dec. 22, 2015) .......................................................... 7

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ................................................................................... 14

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
  153 F. Supp. 2d 935 (S.D. Ind. 2001) .................................................................... 13

*Bruno v. Quten Research Inst., LLC*,
  280 F.R.D. 524 (C.D. Cal. 2011)............................................................................. 16

*Butler v. Mattel*,
  2014 WL 764514 (C.D. Cal. Feb. 24, 2014) ......................................................... 15

*Calence, LLC v. Dimension Data Holdings, PLC*,
  222 Fed. Appx. 563 (9th Cir. 2007) ......................................................................... 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999)............................................................................................... 9

*Chamberlan v. Ford Motor Co.*,
  314 F. Supp. 2d 953 (N.D. Cal. 2004) ............................................................. 12, 13

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) ................................................................................. 15

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) ....................................................................... 11

*Coker v. DaimlerChrysler Corp.*,
  2004 WL 32676 (N.C. Super. Ct. Jan. 5, 2004) ..................................................... 13

*Cuviello v. City & Cnty. of San Francisco*,
  940 F. Supp. 2d 1071 (N.D. Cal. 2013) .............................................................. 6

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ........................................................................ 17

*Decker v. Mazda Motor of Am., Inc.*,
  2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) ....................................................... 19

*Durham v. County of Maui*,
  696 F. Supp. 2d 1150 (D. Haw. 2010) ............................................................. 10, 11

*Ehrlich v. BMW of N. Am., LLC*,
  801 F. Supp. 2d 908 (C.D. Cal. 2010) ............................................................... 18

*Elias v. Hewlett-Packard Co.*,
  2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ........................................................ 20, 22

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ........................................................................ 6

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................................ *passim*

*Geier v. American Honda Motor Co.*,
  529 U.S. 861 (2000) ................................................................................. 9, 10

*Gray v. Toyota Motor Sales, U.S.A.*,
  2012 WL 313703 (C.D. Cal. Jan. 23, 2012) .......................................................... 22

*Grodzitsky v. Am. Honda Motor Co.*,
  2013 WL 2631326 (C.D. Cal. June 12, 2013) ........................................................ 16

*Guido v. L'Oreal, USA, Inc.,*
    2013 WL 454861 (C.D. Cal. Feb. 6, 2013) ............................................................ 11

*Harris v. Las Vegas Sands L.L.C.,*
    2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) ...................................................... 15

*Henderson v. Gruma Corp.,*
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011).......................................................... 15

*Herron v. Best Buy Co.,*
    924 F. Supp. 2d 1161 (E.D. Cal. 2013) ............................................................ 21, 22

*Hofmann v. Fifth Generation, Inc.,*
    2015 WL 5440330 (S.D. Cal. Mar. 18, 2015)........................................................ 22

*Hovsepian v. Apple,*
    2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ...................................................... 21

*Hutt v. City of Fife,*
    2008 WL 509366 (W.D. Wash. Feb. 22, 2008) .................................................... 17

*In re iPhone Application Litig.,*
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)...................................................... 14

*In re Johnson v. Harley-Davidson Motor Co. Grp., LLC,*
    285 F.R.D. 573, 583 (E.D. Cal. 2012) .................................................................. 20

*Kearney v. Hyundai Motor Am.,*
    2010 WL 8251077 (C.D. Cal. Dec. 17, 2010).................................................. 18, 19

*Keegan v. Am. Honda Motor Co.,*
    838 F. Supp. 2d 929 (C.D. Cal. 2012)............................................................. 17, 18

*Lilly v. Ford Motor Co.,*
    2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ............................................................ 13

*Lopez v. Nissan N. Am., Inc.,*
    201 Cal. App. 4th 572 (Cal. Ct. App. 2011)............................................................ 9

*Marsikian v. Mercedes Benz USA, LLC,*
    2009 WL 8379784 (C.D. Cal. May 4, 2009).................................................. *passim*

*Miller UK Ltd. v. Caterpillar, Inc.,*
    292 F.R.D. 590 (N.D. Ill. 2013) .............................................................................. 7

*In re MyFord Touch Consumer Litig.*,
46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................. 20, 22

*NuCal Foods, Inc. v. Quality Egg LLC*,
918 F. Supp. 2d 1023 (E.D. Cal. 2013) ..................................................... 25

*Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.*,
485 U.S. 495 (1988) ...................................................................................... 8

*Robinson Helicopter Co. v. Dana Corp.*,
34 Cal. 4th 979 (2004)............................................................................ 24, 25

*Sherwin-Williams Co. v. JJT, Inc.*,
2014 WL 2587483 (S.D. Cal. June 10, 2014) ......................................... 25

*Sprietsma v. Mercury Marine*,
537 U.S. 51, 54 (2002) ............................................................................... 8, 9

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ....................................................................... 6

*Swanson v. U.S. Forest Serv.*,
87 F.3d 339 (9th Cir. 1996) ........................................................................... 7

*Tait v. BSH Home Appliances Corp.*,
2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) .......................................... 23

*Taragan v. Nissan N. Am., Inc.*,
2013 WL 3157918 (N.D. Cal. June 20, 2013) .......................................... 21

*Townley v. Miller*,
722 F.3d 1128 (9th Cir. 2013) ..................................................................... 16

*In re Toyota Motor Corp.*,
790 F. Supp. 2d 1152 (C.D. Cal. 2011)................................................. 14, 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010)............................................. *passim*

*Trazo v. Nestlé USA, Inc.*,
113 F. Supp. 3d 1047 (N.D. Cal. 2015).................................................... 24

*United States v. Zuno-Arce*,
  25 F. Supp. 2d 1087 (C.D. Cal. 1998) ........................................................ 7

*Whitson v. Bumbo*,
  2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) .......................................... 16

*Williamson v. Mazda Motor of Am., Inc.*,
  562 U.S. 323 (2011) ......................................................................... 10, 11

*Willis v. Buffalo Pumps Inc.*,
  34 F. Supp. 3d 1117 (S.D. Cal. 2014) ..................................................... 18

*Wyeth v. Levine*,
  555 U.S. 555 (2009) .................................................................................. 8

*Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*,
  135 F.3d 658 (9th Cir. 1998) .................................................................... 6

## OTHER AUTHORITIES

76 Fed. Reg. 77183, 77184, 77195 (Dec. 12, 2011) ......................................... 7

76 Fed. Reg. 77185 ...................................................................................... 8, 11

76 Fed. Reg. 77197 ......................................................................................... 10

# I.   INTRODUCTION

In the past several years alone, at least fourteen people have died and many more have sustained life-threatening injuries caused by deadly carbon monoxide emissions from their cars that were equipped with Keyless Fobs.  Those vehicles were not equipped with an automatic engine shutoff to ensure that the vehicle's engine did not continue to emit deadly carbon monoxide long after the car was parked ("Auto-Off").  As a result, innocent drivers, families, and bystanders suffered from carbon monoxide poisoning.  Not one of those deaths or injuries would have occurred if the cars had been equipped with Auto-Off.

Unlike with traditional physical keys, where a driver is assured that the engine must be off if she parks the car and walks away with the key in hand, Keyless Fobs have nothing to do with shutting off the engine.  Consequently, unlike with traditional keys, drivers can and do park their cars and walk away with the Keyless Fob in hand, not realizing that the engine is still running and emitting deadly carbon monoxide.  The consequences are further amplified by the modern-day quiet engine technology that renders vehicles nearly silent even when the engine is turned on.

As detailed in Plaintiff's Class Action Complaint (the "Complaint"), Defendant American Honda Motor Co., Inc. ("Honda") knew about the serious safety risks associated with a Keyless Fob system designed without Auto-Off (the "Defect"), and knew that people were being killed and injured as a result.  But Honda chose not to fix the Defect or to disclose its existence to consumers.  Plaintiff Michelle Rodriguez ("Plaintiff")[1] alleges that she leased a Keyless Fob vehicle from Honda that she otherwise would not have leased, or paid more for it than she otherwise would have paid, if Honda had disclosed the Defect.  She brings various state law claims seeking economic damages or restitution for her overpayments and injunctive relief to stop

---

[1] Plaintiff Johnny Hernandez has withdrawn from the litigation and is no longer a putative class representative in this litigation.  *See* Dkt. No. 34.  Accordingly, Plaintiff is no longer pursuing Connecticut-based claims in this case.

Honda's ongoing deceptive marketing, to remedy the safety Defect, and to notify class members about the defective nature of their vehicles.

Now, in its Motion to Dismiss, Honda argues that Plaintiff's claims conflict with safety standards considered (though not actually enacted) by the National Highway Traffic Safety Administration ("NHTSA"), and that conflict preemption bars Plaintiff's claims for injunctive relief.  Honda also argues that Plaintiff lacks Article III standing, and that Honda had no duty to disclose the dangerous Defect.  Honda's motion is rife with misstatements of law and fact, ignores the weight of legal authority undercutting Honda's position, and downplays the serious safety risks associated with Keyless Fob systems that lack Auto-Off.

*First*, Honda cannot shield itself behind a NHTSA rule never enacted.  Although four years ago NHTSA acknowledged the clear safety problems associated with Keyless Fobs, NHTSA has not enacted any regulation addressing the Defect.  And, even if NHTSA had enacted a final rule requiring an exterior alert to warn drivers that the engine is still running, NHTSA expressly stated that it only intended to set the minimum safety standard.  NHTSA also stated that should the rule be enacted, it was not designed to preempt state law causes of action seeking to establish more stringent safety standards.  As a result, preemption is wholly inapplicable to this case.

*Second*, conflict preemption does not bar Plaintiff's request for injunctive relief.  Honda has failed to meet its burden of establishing an "actual" conflict between the requested relief and the National Traffic and Motor Vehicle Safety Act of 1966 (the "Safety Act"), particularly in light of the presumption against preemption in motor vehicle safety cases.  Honda's argument implies that there might be a conflict between the requested relief and federal law if NHTSA were to act at some unspecified time in the future.  But, the mere potential for a future conflict is insufficient to warrant dismissal on preemption grounds, just as it was in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation* ("*Unintended Acceleration MDL*"), 754 F. Supp. 2d 1145 (C.D. Cal. 2010), a key case

1    that Honda fails to distinguish.

2         *Third*, Plaintiff adequately alleges economic injury sufficient to confer Article

3    III standing.  In this regard, Plaintiff alleges that she already suffered economic loss by

4    overpaying for her Affected Vehicle.  Honda's reliance on cases where the plaintiffs

5    did not allege that they or any other consumers experienced the alleged defect or

6    suffered any injury (physical *or* economic) is therefore unavailing.  Honda incorrectly

7    argues that Plaintiff is required at the pleading stage to offer more particularized

8    information about how much the vehicle's value has diminished, but California federal

9    courts are clear that generalized factual allegations of injury are sufficient on a motion

10   to dismiss so as to confer standing.

11        *Fourth*, Plaintiff sufficiently pleads that Honda had a duty to disclose the

12   Defect.  The duty to disclose exists here because the lack of Auto-Off poses a genuine

13   safety risk, and because Honda had exclusive or superior knowledge of the Defect.

14        The Court should deny Honda's motion for the reasons discussed below.

## II.    BACKGROUND

16        The Keyless Fobs are marketed as the ultimate driving convenience.  Drivers

17   can keep the Fobs in their pockets or bags and can start the car by pressing a button on

18   the dashboard without having to fumble for a traditional key.  *See* ¶ 2.[2]

19        However, this convenience has resulted in deadly consequences.  With

20   traditional keys, once a driver removed the key from the ignition switch, the engine

21   could no longer operate.  ¶ 3.  Drivers knew that if they removed the key from the

22   vehicle, the engine was off.  But Keyless Fobs operate very differently.  Unlike with

23   traditional keys, the Keyless Fob has nothing to do with turning off the engine.  ¶ 6.

24   Engines no longer turn off simply because the car is parked and the Fob is removed

25   from the vehicle.  *Id.*  For Plaintiff's vehicle, as with other vehicles listed in Exhibit 1

26   to the Complaint (the "Affected Vehicles"), the driver can stop the vehicle, put it in

27   _____

28   [2] Except where otherwise noted, references to "¶__" are to paragraphs in the
     Complaint (Dkt. No. 1).

park, and exit with the Fob, but the engine can continue to run until the gas tank is empty, no matter how far away the driver goes from the car, and no matter how long the engine is running. *Id.*

Keyless Fobs are often offered as part of an "upgrade" or "technology" package that costs consumers additional money. ¶ 8. In vehicles that come with a Keyless Fob as standard equipment, the cost of the hardware and technology is built into the vehicle price. In either case, Plaintiff and other consumers pay additional money for the Keyless Fobs. *Id.* But this added convenience comes with a dangerous safety risk because Honda has failed to institute Auto-Off on the Affected Vehicles. ¶ 12.

Tragically, as detailed in the Complaint, many drivers have not been fortunate enough to return to their cars to find the engines still running – instead, they were exposed to deadly levels of carbon monoxide that seeped into their homes after the engine continue to run in the garage. In just the past six months:

A young mother parked her car in the garage and was awakened in the middle of the night by her thirteen-month-old son screaming. She and her son would have died from carbon monoxide poisoning had they stayed in their house just twenty minutes longer. ¶ 18.

A father in Issaquah, Washington, parked the family minivan in the garage, and the family of six was later rushed to the hospital for emergency treatment for carbon monoxide poisoning. The seventeen-month-old baby required three days of intensive treatment in a hyperbaric chamber, and three of the responding firefighters also required medical attention. *Id.*

Earlier, a college professor in Queens, New York, parked her car in her garage and woke up the next morning with permanent brain damage caused by carbon monoxide poisoning. Her partner was dead. ¶ 21.

These and many other tragedies were caused by carbon monoxide poisoning from cars equipped with a Keyless Fob. Unfortunately, these are not isolated stories. The Complaint details *at least* fourteen wholly avoidable deaths and many more

serious injuries – all from carbon monoxide poisoning, and all of which would have been prevented if the vehicles had Auto-Off. ¶ 17.[3]

Since the time that Honda first marketed the Affected Vehicles, and at the time Plaintiff leased her vehicle, the Keyless Fob systems lacked Auto-Off and posed a serious risk of carbon monoxide poisoning. ¶ 152. At the same time, Honda was in a superior position to know about the lack of Auto-Off in its Affected Vehicles and the unreasonable safety hazard created by the lack of Auto-Off. ¶¶ 151-152. As alleged in the Complaint, Honda's exclusive or superior knowledge of the Defect arises through a variety of sources that include select news reports, recalls, patent applications, personal injury lawsuit filings, NHTSA complaints, non-binding NHTSA proposals, and Honda's partial implementation of Auto-Off. ¶¶ 102-149. In fact, Honda installed an automatic shut-off system for many of its remote-start vehicles to shut off the engine if the vehicle is left running in pre-start mode in order to limit deadly carbon monoxide emissions. ¶¶ 143-149.[4] It also implemented an automatic shutdown feature in many of its vehicles to save battery life. ¶¶ 139-42. But Honda failed to disclose the lack of Auto-Off and related safety risk to consumers, inducing consumers to purchase or lease one of the Affected Vehicles and to pay a premium price in the process. ¶ 152.

On or around September 1, 2014, Plaintiff leased a 2014 Honda Civic Si, not knowing that her vehicle lacked Auto-Off or posed a related safety risk. ¶ 41. Prior to entering the lease, she reviewed the sales brochure at the dealership, along with other pre-sale materials from Honda concerning the Civic and its safety ratings. ¶ 46. None of those pre-sale materials warned her that her vehicle lacked Auto-Off or that the lack

---

[3] Plaintiff's counsel have learned of at least five more deaths since filing the Complaint in November 2015, bringing the total number of avoidable deaths to nineteen. If the Court requests or requires further allegations about the safety hazard posed by the Defect, Plaintiff's counsel could and would detail the circumstances of these additional deaths.

[4] In a remote-start vehicle, a driver can use an electronic fob to start the engine remotely to warm or cool the vehicle before entering.

of Auto-Off poses a serious safety risk.  ¶ 47.  Although Plaintiff herself has been fortunate enough not to suffer carbon monoxide poisoning, she nevertheless has experienced the Defect – she has parked her vehicle, removed the Keyless Fob, walked away, and later discovered the vehicle's engine was still running.  ¶ 49. Plaintiff would not have leased the vehicle, or would have paid less for it, had she known about the lack of Auto-Off and related safety risks.  ¶ 54.

### III.   ARGUMENT

#### A.   Legal Standard

A motion to dismiss challenges the legal sufficiency of the claims alleged. While the complaint must plead enough facts to render the claims plausible on their face, a claim has plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1079 (N.D. Cal. 2013).[5]  "On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

Additionally, under Federal Rule of Civil Procedure 9(b), the fraudulent omission claims asserted by Plaintiff "can succeed without the same level of specificity required by a normal fraud claim."  *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1189 (Rule 9(b) requirements relaxed for fraudulent omission claims "because '[r]equiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission'").

Plaintiff has alleged sufficient factual allegations that "plausibly suggest an entitlement to relief."  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[6]

---

[5] Unless otherwise indicated, all internal citation and quotation marks are omitted.

[6] Moreover, dismissal "without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment."  *Eminence Capital,*

**B.      Honda Cannot Skirt Page Limits by Incorporating Other Defendants' Arguments by Reference**

Honda's attempt to incorporate other Defendants' arguments in this case should be rejected.  Notably, Honda did not request from Plaintiff or the Court leave to exceed the 25-page briefing limit, and it should not be allowed to skirt the page limit by incorporating other briefing by reference.  *See* Motion to Dismiss ("MTD") at 8 n.4 (purporting to incorporate arguments advanced by Toyota, Kia, and "other defendants … as appropriate").  The Ninth Circuit has expressly rejected this tactic.  *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343, 345 (9th Cir. 1996), (holding that trial court properly struck party's incorporation of additional briefing, and upholding sanctions); *see also United States v. Zuno-Arce*, 25 F. Supp. 2d 1087, 1123 n.53 (C.D. Cal. 1998) (rejecting defendant's "attempts to 'incorporate by reference' co-defendant['s] submission on this issue"); *Calence, LLC v. Dimension Data Holdings, PLC*, 222 Fed. Appx. 563, 566 (9th Cir. 2007); *Barnes v. Sea Hawaii Rafting, LLC*, 2015 WL 9459893, at *2 n.4 (D. Haw. Dec. 22, 2015); *Miller UK Ltd. v. Caterpillar, Inc.*, 292 F.R.D. 590, 592-93 (N.D. Ill. 2013).

**C.      Plaintiff's Claims Do Not Conflict with Any Safety Standards**

In a puzzling argument not supported by case law, Honda contends that NHTSA's  tentative suggestions from December 2011 about an 85 decibel audible alert system – suggestions that were never enacted and do not conflict with Auto-Off – somehow foreclose this litigation.  Honda is mistaken.

NHTSA recognized over four years ago that there are "clear safety problem[s]" resulting from Keyless Fobs, particularly since they operate differently than traditional physical keys.  But NHTSA has not enacted any regulation addressing this safety problem.  *See* 76 Fed. Reg. 77183, 77184, 77195 (Dec. 12, 2011).  In December 2011, NHTSA considered requiring a one-second, 85 decibel alert that would sound when a

---

*LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also* Fed. R. Civ. P. 15(a)(2).  Plaintiff respectfully requests leave to amend if necessary.

driver removes the Keyless Fob from a running vehicle, but questioned whether one second was long enough and whether voice alerts would be more effective. *Id.* at 77192-93. NHTSA proposed amending Federal Motor Vehicle Safety Standard ("FMVSS") 114 to require the alert, and requested comments by March 12, 2012.

Honda contends that NHTSA rejected Auto-Off. Not true. NHTSA considered Auto-Off and recognized that some manufacturers had already installed it, but acknowledged that it was unable to decide how long to allow the engine to run after the Fob is removed before the engine shuts off. *Id.* at 77194-195. Plainly, NHTSA did not reject Auto-Off and instead requested comment on this as well.[7]

More than four years and nineteen avoidable deaths later, NHTSA has not acted. *There is no NHTSA rule.*[8]

The *absence* of a NHTSA regulation cannot preempt a state law claim against a vehicle manufacturer. If NHTSA's inaction could preempt state law claims, "deliberate federal inaction could always imply pre-emption, which cannot be." *Puerto Rico Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 503 (1988). An unbroken line of authority "explicitly rejects the notion that mere congressional silence on a particular issue may be read as pre-empting state law." *Wyeth v. Levine*, 555 U.S. 555, 603 (2009) (Thomas, J., concurring). For example, in *Sprietsma v. Mercury Marine*, a boat's outboard motor propeller struck and killed the plaintiff's wife. 537 U.S. 51, 54 (2002). The defendant maintained that federal inaction preempted the strict liability claim because, while the Coast Guard could have banned the product, it decided to "take no regulatory action" after a year and a half of study. *Id.* at 61, 65-66. The state court in *Sprietsma* "concluded 'that the Coast

---

[7] Even if there were a NHTSA regulation requiring an alert, Honda's self-serving statement that it complies with that hypothetical regulation by referencing its owner's manual is unavailing where the manual is silent as to the volume or duration of the beep, and Honda concedes that it does "not seek … to establish the truth of [the Owner's Manuals'] contents." *See* Request for Judicial Notice.

[8] Even if NHTSA were to issue a final rule regulating the proposed 85 decibel alert, the rule would not take effect for more than two years following its enactment. *See* 76 Fed. Reg. 77185.

---

Guard's failure to promulgate a propeller guard requirement here equates to a ruling that no such regulation is appropriate.'" *Id.* at 66.  The Supreme Court concluded that this was "quite wrong." *Id.* at 65.  A decision not to regulate at the federal level "is fully consistent with an intent to preserve state regulatory authority" – the simple absence of federal regulation does "not convey an 'authoritative' message of a federal policy" that can have any preemptive effect. *Id.* at 65, 67.

Honda argues that Plaintiff's claims must be dismissed because Honda cannot be liable for conduct that complies with a federal regulation.  Honda seemingly conflates the safe harbor doctrine with federal preemption.  Honda largely relies on California safe harbor cases where the courts did not address preemption but instead analyzed whether the safe harbor doctrine barred the plaintiffs' claims.  For a defendant to be protected by the safe harbor doctrine, a regulation must either expressly bar the claim or must explicitly permit the conduct at issue.  *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) (defendant not protected by safe harbor doctrine because defendant's conduct – selling cellular phones below cost – was not expressly barred or permitted by relevant regulation); *cf. Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 592 (Cal. Ct. App. 2011) (safe harbor doctrine barred plaintiffs' claims that defendants' vehicle odometers miscalculated mileage by 2% because state regulation explicitly considered odometers to be correct if they registered mileage within 4%).  Likewise, in *Alvarez v. Chevron Corp.*, 656 F.3d 925, 931-34 (9th Cir. 2011), where the plaintiff challenged the design of the defendant's gasoline dispenser, the court applied the safe harbor doctrine because the dispenser's design stemmed from "the mandated design of gasoline dispensers that are certified as lawful by California regulators."

Defendant's foonote citation to *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000), is incomplete and misleading.  In *Geier*, the plaintiff was injured in a collision and argued that her Honda vehicle was defective because while it was equipped with manual shoulder and lap belts, the car lacked a driver's side air bag.  *Id.*

at 865.  The Court recognized that the primary focus in the preemption analysis is whether the lawsuit actually conflicts with a federal regulatory objective.  *Id.* at 871-72.  The Court found that FMVSS 208 "deliberately provided the manufacturer with a range of choices among different passive restraint devices," which would allow for technological developments and would "bring about a mix of different devices introduced gradually over time."  *Id.* at 875.  The Court therefore concluded that enforcement of the plaintiff's claim "would have presented an obstacle to the variety and mix of devices that the federal regulation sought" by requiring Honda to "install airbags rather than other passive restraint systems."  *Id.* at 881.

This case is very different.  Enforcement of Plaintiff's claims would not conflict with NHTSA regulations.  NHTSA expressly stated that it intended the suggested amendments to FMVSS 114 to serve as a minimum safety standard.  NHTSA specifically rejected the suggestion that, if it enacted a rule requiring an 85 decibel alert, that such a rule would preempt state law claims imposing a higher safety standard:

> NHTSA does not intend that this rule preempt state tort law that would effectively impose a higher standard on motor vehicle manufacturers than that established by today's rule. Establishment of a higher standard by means of State tort law would not conflict with the minimum standard announced here. Without any conflict, there could not be any implied preemption of a State common law tort cause of action.

76 Fed. Reg. 77197.

This case is more analogous to the decisions in *Williamson v. Mazda Motor of America, Inc.*, 562 U.S. 323, 336 (2011), and *Durham v. County of Maui*, 696 F. Supp. 2d 1150 (D. Haw. 2010), where the plaintiffs' claims were allowed to proceed despite the presence of arguably conflicting vehicle regulations.

In *Williamson*, the plaintiffs argued that the vehicle was defectively designed because it had a lap belt on the rear inner seat but no lap and shoulder belt.  562 U.S. at 337.  The NHTSA regulation provided manufacturers with a choice of installing simple lap belts or lap-and-shoulder belts for rear inner vehicle seats.  *Id.* at 326-27.

Despite the fact that the regulation arguably conflicted with the relief the plaintiffs sought, the Court concluded that there was no preemption because there was no evidence that the agency intended its regulation to impose a maxiumum rather than a minimum safety standard. *Id.* at 335. Similarly here, if NHTSA had enacted a rule requiring an 85 decibel alert, which it did not, NHTSA stated that the rule would act as a minimum safety standard, not a maximum. NHTSA did not intend to preempt state law causes of action seeking to impose a higher safety standard.

Likewise, in *Durham*, 696 F. Supp. 2d at 1151, the Court rejected the auto manufacturer's argument that the plaintiffs' claims, that the vehicle was defective since it lacked side-impact airbags, were preempted. The regulation did not require or provide as an option the installation of side-impact airbags. *Id.* The court concluded (1) the plaintiffs' claims did not conflict with the purpose of FMVSS 208 which was to reduce deaths and injures, and (2) the regulation did not contain any side-impact airbag requirements, "much less conflicting ones." *Id.* at 1158-59.

Here, even if there were a regulation requiring an 85 decibel alert, which there is not, a vehicle could be equipped with an 85 decibel exterior alert *as well as* Auto-Off in case the driver exits the vehicle with the engine still running. And Plaintiff's claims similarly do not conflict with the regulatory objectives of FMVSS 114, which was designed to "reduce the incidence of crashes, injuries and fatalities resulting from theft and accidental rollaway of motor vehicles." 76 Fed. Reg. 77185.

Honda's footnote suggestion that the case should be stayed by operation of primary jurisdiction, *see* MTD at 11 n.8, has been repeatedly rejected by federal courts in California.[9] *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1200 (claims

---

[9] Honda's citation to *Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008), is inapposite. In *Clark*, the court found primary jurisdiction appropriate only because highly technical issues – whether a Voice over Internet Protocol provider qualified as a "telecommunications carrier" – raised "a question of first impression" for the Federal Communications Commission. *Id.* at 1115*; see Guido v. L'Oreal, USA, Inc.,* 2013 WL 454861, at *6 (C.D. Cal. Feb. 6, 2013) (interpreting *Clark* as only applicable to highly technical issues that require agency expertise and consideration).

1  sounding in tort and contract were "within the conventional competence of the

2  courts"); *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *9 (C.D. Cal.

3  May 4, 2009) (same).

4  **D.    Plaintiff's Request for Injunctive Relief Is Not Preempted**

5  In arguing that Plaintiff's requested injunctive relief is barred by operation of

6  conflict preemption, Honda ignores relevant California federal court decisions that

7  have consistently held that in auto defect cases, requests for injunctive relief, including

8  recalls, are not preempted.  Honda neither mentions nor distinguishes the holding in

9  the *Unintended Acceleration MDL*, where the Court rejected the same preemption

10  arguments Honda makes here.

11  Honda's argument that Plaintiff's requested relief is preempted by the Safety

12  Act falls flat.  Conflict preemption only exists when "state law conflicts with federal

13  law, either … because it [i]s impossible to comply with both laws or … because state

14  law stands as an obstacle to accomplishing the purposes of federal law."  *Unintended*

15  *Acceleration MDL*, 754 F. Supp. 2d at 1195.  Importantly, there is a presumption

16  against conflict preemption "in areas traditionally regulated by the States."  *Id.* at

17  1196.  California federal courts have consistently held that motor vehicle safety "is an

18  area of law traditionally regulated by the states," and that the presumption against

19  preemption therefore applies to vehicle defect class actions.  *See id.*; *Chamberlan v.*

20  *Ford Motor Co.*, 314 F. Supp. 2d 953, 958 (N.D. Cal. 2004) ("Motor vehicle safety is

21  an area of traditional State police power.").

22  Because there is a presumption against preemption in this case, Honda "bears

23  the burden of showing that it was Congress' clear and manifest intent to preempt State

24  law."  *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1197.  As such, Honda must

25  establish that there is an "an actual conflict" between Plaintiff's requested relief and the

26  Safety Act.  "[T]o constitute an actual conflict, the state law at issue must conflict with

27  the intent of Congress in a specific and concrete way."  *Id.* at 1198.

28  Honda argues, in essence, that if NHTSA acts in the future, Plaintiff's requested

relief might conflict with that future action.  Judge Selna rejected that same argument in the *Unintended Acceleration MDL*, noting that even "a real and substantial possibility of conflict is insufficient to warrant dismissal on preemption grounds."  *Id.*  It is not enough that the relief sought "<u>might</u> conflict with some future action of NHTSA as it investigates the alleged defect[s] at issue."  *Id.*

Honda relies on *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.* (*"Bridgestone"*), 153 F. Supp. 2d 935 (S.D. Ind. 2001), and the unpublished decision in *Lilly v. Ford Motor Co.*, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002), both of which were criticized by Judge Selna for their overly broad application of conflict preemption.[10]  *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1196, 1199.  The district court in *Chamberlan* similarly criticized the reasoning of *Bridgestone* and *Lilly*.  314 F. Supp. 2d at 965, 967.  The *Chamberlan* court viewed both decisions as "unpersuasive" noting the presumption against preemption in vehicle defect class actions, and that a defendant cannot overcome the presumption without evidence of an "actual conflict."  *Id.*; *see also Marsikian*, 2009 WL 8379784, at *8 (concluding that defendant had "not shown that preemption doctrine would bar a recall remedy").

**E.     Honda's Remaining Arguments Are Unavailing**

**1.     Plaintiff alleges a sufficient "Injury-in-Fact" to confer Article III standing.**

Honda argues that Plaintiff has not alleged a sufficient injury-in-fact to confer Article III standing.  The argument has no merit, particularly at the pleadings stage where "general factual allegations of injury resulting from the defendant's conduct may suffice."  *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1160.  To the extent that Plaintiff must allege an injury that is actual *or* imminent, she does both.

First, Plaintiff alleges that she has already suffered *actual* economic losses. Plaintiff alleges that she overpaid for the vehicle because the price of the defective

---

[10] Honda also relies on the unpublished state trial court decision in *Coker v. DaimlerChrysler Corp.*, 2004 WL 32676 (N.C. Super. Ct. Jan. 5, 2004), which was rejected by this Court in *Marsikian*, 2009 WL 8379784, at *9 n.3.

Keyless Fob was built into the vehicle's price.  *See* ¶ 39.  Honda also misconstrues Plaintiff's Complaint and erroneously argues that Plaintiff did not allege that the Defect actually diminished the value of her vehicle.  MTD at 15.  The Complaint, however, is replete with allegations that the Defect diminished the value of Plaintiff's vehicle.  *See* ¶¶ 39, 164; *see also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (C.D. Cal. 2011) ("A vehicle with a defect is worth less than one without a defect.").

Because Plaintiff alleges that she already has actually suffered economic losses, she necessarily has Article III standing.  The Court in the *Unintended Acceleration MDL* expressly held that "overpayment, loss in value, or loss of usefulness is sufficient to confer standing," 754 F. Supp. 2d at 1162.

While Honda acknowledges that allegations of economic injury may suffice to demonstrate actual or imminent harm, it argues that Plaintiff's allegations are insufficient here.  Honda incorrectly relies on *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), and *In re iPhone Application Litigation*, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011), where the plaintiffs, unlike here, failed to allege that they themselves or any other consumers had actually been injured by the claimed defects.  *See Birdsong*, 590 F.3d at 961 (finding that diminution in value did not constitute injury because it rested on hypothetical risk of hearing loss from Apple iPods that never occurred); *In re iPhone Application Litig.*, 2011 WL 4403963, at *5 (where data privacy was allegedly breached, plaintiffs focused on "abstract concepts (*e.g.*, lost opportunity costs, value-for-value exchanges)," but did not identify any actual injury or economic damages they had suffered).

In connection with the argument that Plaintiff has not sufficiently pled particularity as to the diminution in value claim,[11] Honda suggests that Plaintiff has

---

[11] Despite Honda's contention that Plaintiff has failed to identify "particulars" about the alleged diminution in value, case law is clear that so long as Plaintiff "offer[s] detailed, non-conclusory factual allegations of the product defect, the

not accounted for the possibility that potential buyers may pay more for the convenience of a Keyless Fob when Plaintiff sells her vehicle.  *See* MTD at 16 n.11.  Leaving aside the fact that such an argument ignores the defective nature of Keyless Fobs, Honda's arguments about possible set-offs to the diminution in value claim are not properly considered on a motion to dismiss.

Second, in addition to alleging actual economic losses already suffered, Plaintiff alleges that she faces a realistic risk of imminent physical injury.  As evidenced by at least 14 documented deaths and scores of instances of devastating injuries that continue to mount, the risk of carbon monoxide poisoning realistically threatens Plaintiff, making the risk of physical injury imminent.[12]

Plaintiff also has standing to pursue injunctive relief on behalf of consumers in the proposed class, since she alleges that she already was injured (economically) and defendant's conduct continues to threaten consumers (both economically and physically).  *See Henderson v. Gruma Corp.*, 2011 WL 1362188, at *2-3 (C.D. Cal. Apr. 11, 2011); *see also Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at *3-4 (C.D. Cal. Aug. 16, 2013).  This case is different from *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1148 (2013), where the plaintiffs did not allege they had actually been injured or that they had experienced the conduct complained of.  The plaintiffs in *Clapper* pled only that they *suspected* that surveillance interceptions of human rights organizations *might* have occurred, that their client communications *may* be intercepted in the future, and that they may then have to incur expenses to protect confidentiality.  *Id.*

Honda's reliance on other cases where none of the plaintiffs had actually experienced the alleged defect fares no better.  *See Butler v. Mattel*, 2014 WL 764514,

---

economic loss injury flows from the plausibly alleged defect at the pleadings stage." *In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1166.

[12] While the class definition in Plaintiff's Complaint excludes individuals who have suffered personal injuries, ¶ 159(c), Plaintiff has a reasonable concern that she could suffer from carbon monoxide poisoning from her Affected Vehicle.

at *2 (C.D. Cal. Feb. 24, 2014) (in grappling with predominance issues on motion for class certification, court noted that some class members may not have standing since they had not actually experienced alleged defect of mold growing on children's sleep seat); *Townley v. Miller*, 722 F.3d 1128, 1133-34 (9th Cir. 2013) (finding that some plaintiffs who had not voted in election had no standing to challenge ballot measure because injury was "conjectural or hypothetical," but concluded other plaintiffs did suffer injuries "[i]n light of their stated intent to cast ballots"); *Whitson v. Bumbo*, 2009 WL 1515597, at *4 (N.D. Cal. Apr. 16, 2009) (finding no standing where plaintiff had not experienced any manifestation of defect and had not claimed that she "actually used or was harmed by any defect" in child seat). Here, Plaintiff alleges that she and others experienced the Defect. For example, she alleges she found her vehicle running despite parking it and removing the Keyless Fob. *See* ¶¶ 49-52. And regardless, to the extent any of Honda's cases suggest that standing requires a manifestation of the defect, this Court has emphatically disagreed. *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1164. In short, there are multiple grounds for standing, since Plaintiff thoroughly details the safety Defect supporting her economic loss; *and* she experienced the Defect; *and* she is concerned about the increased risks of carbon monoxide poisoning from her vehicle. *See id.*, 754 F. Supp. 2d at 1163 ("[a]n injury-in-fact may simply be the fear or anxiety of future harm.").

Finally, Honda argues in a footnote that the Complaint must be dismissed as to all Affected Vehicles other than the one Plaintiff leased, though Plaintiff alleges that each of those vehicles suffers from the same Defect. ¶ 6. This argument lacks support in the case law and is better addressed in a motion for class certification. In fact, the Court rejected the same argument advanced here by Honda just three years ago in another vehicle class action. *See Grodzitsky v. Am. Honda Motor Co.*, 2013 WL 2631326, at *4 (C.D. Cal. June 12, 2013) (rejecting Honda's same argument in auto defect class action as "ill-suited to a motion to dismiss," and explaining that argument "is better made at the class certification stage"); *Bruno v. Quten Research Inst., LLC*,

280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.").[13]

### 2. Honda had a duty to disclose the lack of Auto-Off and associated safety risks and failed to do so.

In a nondisclosure case like this one, the plaintiff can state a cause of action under California law when the defendant has a duty to disclose an alleged defect. *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007).[14] A manufacturer generally has a duty to disclose a safety defect. *See Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 836 (2006); *see also Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 941 (C.D. Cal. 2012). Moreover, a duty to disclose arises in at least one of four circumstances: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact[s]." *Falk*, 496 F. Supp. 2d . at 1095 (*quoting LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)). Here, Plaintiff alleges that the Defect poses a deadly safety hazard, that Honda had exclusive/superior knowledge of the Defect, and that the Defect was unknown to Plaintiff at the time of her lease of an Affected Vehicle.

---

[13] The primary cases relied upon by Honda are inapposite. In *Aquair Ventures LLC v. Gulf Stream Coach Inc.*, 2008 WL 4104218, at *3 (N.D. Cal. Sept. 4, 2008), two of the three plaintiffs did not own the vehicle at issue and were therefore deemed not to have Article III standing. And, in *Hutt v. City of Fife*, 2008 WL 509366, at *6 n.6 (W.D. Wash. Feb. 22, 2008), the court found that the plaintiff lacked standing to assert a conversion claim as he was not the owner of the vehicle. Neither of those cases have any impact on putative class members' claims against Honda.

[14] Plaintiff asserts claims based on Honda's actionable failure to disclose a material safety defect, and not based on affirmative misrepresentations.

### a.   Honda had a duty to disclose the Defect because it posed an unreasonable safety risk.

"[T]he Ninth Circuit has recognized that California law imposes on manufacturers a general duty to disclose defects in their products relating to safety issues."  *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117, 1132 (S.D. Cal. 2014).  In particular, defendants are "under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use."  *Keegan*, 838 F. Supp. 2d at 941; *see also Kearney v. Hyundai Motor Am.*, 2010 WL 8251077, at *6-7 (C.D. Cal. Dec. 17, 2010); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010); *Falk*, 496 F. Supp. 2d at 1094.  That is, where a plaintiff alleges a safety defect, he or she sufficiently pleads a duty to disclose for purposes of California's consumer protection statutes.  *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1330-31 (C.D. Cal. 2013); *see also Keegan*, 838 F. Supp. 2d at 944; *Kearney*, 2010 WL 8251077, at *6-7; *Marsikian*, 2009 WL 8379784, at *6.

In this case, Plaintiff alleges that Honda failed to disclose a safety Defect.  According to the Complaint, Honda adopted a Keyless Fob system that lacks the adequate safeguard of an automatic engine shutoff to ensure that the vehicle's engine does not continue to run unabated, emitting deadly carbon monoxide.  ¶¶ 12-15.  Without Auto-Off, the Affected Vehicles have a dangerous propensity to cause carbon monoxide poisoning, creating an undue risk of injury and death.  ¶¶ 85, 98.  Affected Vehicles allow colorless and odorless carbon monoxide – the silent killer – to be emitted continually and unabated after the car is parked and the driver exits the vehicle.  ¶ 28.  Those continuous emissions accumulate, especially in enclosed environments, and are dangerous to human health and potentially fatal.  *Id.*

Since Honda has "a duty to disclose facts concerning 'safety issues'" (*Kearney*, 2010 WL 8251077, at *6), and since the alleged safety issues are certainly material to a reasonable consumer, Plaintiff sufficiently pleads a material breach of the duty to disclose.  To be sure, "the average consumer would expect the manufacturer to

guarantee against unreasonable safety risks." *Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705, at *4 (C.D. Cal. Oct. 24, 2011); *see also Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *7 (C.D. Cal. Nov. 8, 2013) (same).

Plaintiff also alleges that reasonable consumers like her would assume or expect that the Keyless Fobs would turn off the Affected Vehicles after removing the Fob for a sufficient distance or period.  ¶¶ 4-6, 12-15.  According to the Complaint, Honda eliminated the physical and psychological connection between the Keyless Fob and Affected Vehicles.  *Id.*  Considering human factors analyses, reasonable consumers do not fully appreciate that the Keyless Fob plays no role in turning off the engine regardless of the distance or time for which the Fob is removed from the vehicle. ¶¶ 13-16.  Honda ignored these human factors in designing its Keyless Fob system for the Affected Vehicles.  ¶¶ 92-97.

Plaintiff further alleges that she was not aware when she leased her Affected Vehicle that it lacked Auto-Off and thus posed a severe safety risk.  ¶¶ 41, 47, 51. Had she known of the lack of Auto-Off and associated safety concerns, she would not have leased it or paid as much for it.  ¶ 36.  Therefore, the alleged safety Defect is material.  *See Falk*, 496 F. Supp. 2d at 1096 (plaintiffs adequately alleged that reasonable consumers would view defective speedometer as material; had they known of it, they would not have paid full price).  At bottom, Honda has a duty to disclose the safety concerns at issue, and Plaintiff alleges that Honda breached that duty, which is enough to show that reasonable consumers are likely to be deceived.  *See Kearney*, 2010 WL 8251077, at *6-7.

               **b.**    **Honda also had a duty to disclose the lack of Auto-Off based on its exclusive knowledge (*i.e.*, Honda was in a superior position to know about the Defect and related safety risks).**

A defendant is obligated to disclose facts when it has exclusive knowledge of material facts not known to the plaintiffs, namely, when the defendant is in a superior position to know of the relevant facts.  *See, e.g., Falk*, 496 F. Supp. 2d at 1094-95; *see also Marsikian*, 2009 WL 8379784, at *6.  The "exclusive knowledge" standard is not

construed literally.  For example, in *Johnson v. Harley-Davidson Motor Co. Group, LLC*, the defendants argued that a "duty to disclose even a known, material fact does not exist unless the defendant has exclusive knowledge of that fact."[15]  But *Johnson* explained that "courts do not apply 'exclusivity' with such rigidity.  Rather, exclusivity is analyzed in part by examining whether the defendant had 'superior' knowledge."[16]  And the district courts in *In re MyFord Touch Consumer Litigation*, *Elias v. Hewlett-Packard Co., Falk*, and *Marsikian* all have said the same.[17]

The Complaint alleges that Honda has a duty to disclose the lack of Auto-Off in the Affected Vehicles based on Honda's exclusive knowledge thereof.  ¶¶ 150-52.  In other words, Honda is in a superior position to know about the lack of Auto-Off and related safety concerns.  In its motion, Honda responds that Plaintiff's allegations are not substantiated by the facts.  MTD at 20.  To the contrary, Plaintiff alleges ample facts supporting that Honda is in a superior position to know about the lack of Auto-Off and related safety concerns.  According to the Complaint, Honda's knowledge arises at least through:  (1) certain news reports of injuries and deaths from similar Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 102-06); (2) recalls of similar Keyless Fob vehicles that lack Auto-Off (¶¶ 107-10); (3) patent applications covering vehicle Auto-Off systems (¶¶ 111-16); (4) personal injury lawsuit filings concerning Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 117-23); (5) consumer complaints filed with NHTSA regarding similar Keyless Fob systems used by other automakers (¶¶ 124-25); (6) review of and response to non-binding NHTSA proposals (¶¶ 126-30);[18] and (7) Honda's implementation of Auto-Off in applications

---

[15] 285 F.R.D. 573, 583 (E.D. Cal. 2012).

[16] *Id.* ("Since Defendant was in a ***superior position*** to know of its defective engines, Plaintiffs properly allege that Defendant had exclusive knowledge of material facts not known to Plaintiffs.") (emphasis added).

[17] *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014); *Elias v. Hewlett-Packard Co.*, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014) ("*Elias II*"); *Falk*, 496 F. Supp. 2d at 1096-97; *Marsikian*, 2009 WL 8379784, at *6.

[18] On December 12, 2011, NHTSA published a Notice of Proposed Rulemaking, which has never been acted on or implemented, outlining the dangers of Keyless Fobs.

other than the Keyless Fob system for the Affected Vehicles (¶¶ 131-49).[19]

In response, Honda cites to *Taragan v. Nissan N. Am., Inc.*, 2013 WL 3157918, at *6 (N.D. Cal. June 20, 2013), for its discussion of the 'exclusive knowledge' requirement.  In *Taragan*, however, the plaintiff merely stated in a conclusory fashion that Nissan was in a superior position to know about the quality and nature of its vehicles, with no factual allegations to support it.  As set forth above, Plaintiff alleges specific facts alerting Honda that its Keyless Fob system design was, in fact, defective – as contemplated in *Taragan*.  *Id.* at *7.  Moreover, the *Taragan* complaint *did not allege* a duty to disclose based on a *safety* concern, and thus, the district court emphasized that it could not consider whether the defendant had a duty to disclose the defect on the grounds that it involved a safety concern.  *See id.* at *8.  In this case, by contrast, Plaintiff squarely alleges a duty to disclose on grounds, among others, that the Defect poses a safety concern.

Honda gets no additional mileage from *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161 (E.D. Cal. 2013), or *Hovsepian v. Apple*, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009).  Neither of the cited cases involved a *safety* defect, and the district court in *Hovsepian* explicitly recognized that a manufacturer may have a duty to disclose a safety defect.  *See id.* at *3.  Furthermore, both of the cited cases merely present generalized allegations of exclusive knowledge without alleging facts to show that defendants were in a superior position to know about the alleged defects.  Again, as detailed above, that is *not* the case here.

_____

NHTSA recognized that "driver[s] may not immediately know that the propulsion system has not been turned off" and drivers "may have died because of carbon monoxide poisoning from their vehicles."  ¶ 129.

[19] Since at least late 2009, Honda had knowledge of the need for Auto-Off, and worked on the auto-off technology internally with its remote start vehicles in order to limit carbon monoxide emissions in pre-start situations, but Honda opted not to implement Auto-Off in its Keyless Fob systems for the Affected Vehicles.  ¶¶ 143-49, 152.  Moreover, the Complaint alleges Honda has knowledge of facts about Auto-Off through its implementation of an automatic shutdown feature in many of its vehicles whereby, if consumers leave the accessory mode on, the vehicle automatically shuts down to save battery life.  ¶¶ 139-42, 152.

Nonetheless, Honda argues that the dangers associated with the lack of Auto-Off were already in the public domain because of personal injury lawsuits, NHTSA complaints, and news reports, which defeats the exclusive knowledge requirement in Honda's view.  MTD at 21-22.[20]  Yet, the availability of sporadic information on the Internet or in other media regarding the dangers of Keyless Fob vehicles does not cancel out Honda's superior knowledge.  *See Asghari*, 42 F. Supp. 3d at 1327 n.74 ("Many customers would not have performed an internet search before beginning a [product] search.  Nor were they required to do so"); *see also Unintended Acceleration MDL*, 754 F. Supp. 2d at 1192 ("While prospective [Toyota] customers could have been tipped off to the possibility of [sudden unintended acceleration] by researching past complaints filed with NHTSA, many customers would not have performed such a search, nor would they be expected to").  "Plaintiffs have sufficiently alleged that [Defendant] knew significantly more about the alleged [] defect" than the limited information available to the public.  *See id*.; *see also In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d at 960 ("Even if the public – and therefore Plaintiffs – were aware of some problems with [the in-vehicle-dash-control systems], that does not establish that either the public or Plaintiffs knew or should have known of the severity of the problems…."); *Elias II*, 2014 WL 493034, at *9 ("customers cannot 'be expected to seek facts which they h[ave] no way of knowing exist []'"); *Hofmann v. Fifth Generation, Inc.*, 2015 WL 5440330, at *8-9 (S.D. Cal. Mar. 18, 2015) (information from a magazine article cannot be imputed to consumers).  At most, the nature of information in the public domain "is a question of fact not properly resolved on a motion to dismiss."  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1230 (N.D. Cal. 2014).[21]

---

[20] To the extent Honda refers to articles from the Internet, aside from what is already contained in the operative Complaint (MTD at 22), the contents of those articles would not be the proper subject of judicial notice and they fall outside the proper scope of a Rule 12(b)(6) motion.

[21] Defendants' case authorities, *Herron* and *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703 (C.D. Cal. Jan. 23, 2012), each addressed a defect that was readily

Honda also reasons that the owner's manuals disclose the material risks associated with the lack of Auto-Off and thereby establish that Honda did not, in fact, have exclusive knowledge of the Defect.  MTD at 21.  This line of reasoning goes astray for two main reasons.  *First*, the cited owner's manuals are not contained in the operative Complaint, and they are not the proper subject of judicial notice.  *See* Plaintiffs' Opp. to Honda's Request for Judicial Notice.  *Second*, the owner's manuals are not pre-sale marketing materials; an objectively reasonable consumer would not review an owner's manual prior to purchase.  *See Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387, at *2-3 (C.D. Cal. Aug. 31, 2011) (rejecting argument that product manuals disclosed the alleged defect, since the manuals were provided to consumers after they bought the products); *see also Asghari*, 42 F. Supp. 3d at 1328.[22]  Plaintiff does not allege that she received or reviewed the 465-page owner's manual before leasing her vehicle.  *See* ¶ 46 (enumerating pre-sale materials that Plaintiff actually reviewed prior to leasing vehicle, including sales brochure[23] and materials concerning vehicle safety ratings).  Nor is it logical that Plaintiff would have combed through Honda's "Owners" website – a website clearly not designed to market the vehicles to potential consumers – to find an owner's manual before she even leased the vehicle.[24] In any event, the owner's manuals make no mention of the Defect.  The beep

_____

observable from daily use of the product.  By contrast, the Defect in this case only becomes apparent (if at all) in an incident after the driver exits the Affected Vehicle with the Keyless Fob and leaves the vehicle running.  In other words, customers only tend to learn of the Defect by experiencing it.  *See Falk*, 496 F. Supp. 2d at 1096-97.

[22] In a footnote, Honda concludes that Plaintiff admittedly recognizes she must press the "Start/Stop" button to shut off the engine of an Affected Vehicle, negating exclusive knowledge.  Actually, while Plaintiff obviously understood that pressing the "Start/Stop" button can shut off the engine, she did not know at the time of her lease that the Keyless Fob could be removed from the vehicle for any distance or length of time without the running engine ever shutting off, thereby creating a safety hazard.

[23] As stated in the complaint, Exhibit 4 is merely a representative example of pre-sale materials for the 2014 Honda Civic.  *See* ¶ 48.

[24] Honda fails to explain in its Request for Judicial Notice that the Owner's Manual is only available for download on http://techinfo.honda.com (a subscription-based website designed for Honda independent repair shops and vehicle owners), and http://owners.honda.com (the website designed specifically for current Honda owners).

mentioned in the manuals is irrelevant to Plaintiff's core claims that Honda did not disclose the lack of Auto-Off, which poses a serious safety risk.

Finally, Honda declares that there is no duty to disclose because Honda fully complies with NHTSA's "proposed rule" regarding warnings to drivers who may inadvertently exit their vehicles without turning it off.  MTD at 22.  This argument fails because Honda could not have fully complied with a non-binding NHTSA suggestion that never went into effect (*see* Section B *supra*).  The argument also fails because the Complaint alleges that Honda's door beep falls woefully short of addressing the safety concerns raised by NHTSA.

In sum, Plaintiff sufficiently pleads that Honda was in a superior position to know about the nature of the Defect and the scope of the dangers surrounding it. Consequently, Honda had a duty to disclose the Defect.

### 3.    Plaintiff states a claim for unjust enrichment under California law.

Honda's perfunctory argument in a footnote that unjust enrichment is not a cause of action under California law is unavailing.  *See* MTD at 17 n.13.  The Ninth Circuit recently held that a claim for unjust enrichment should not be dismissed just because it is not a "standalone cause of action."  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  The court's "unambiguous" decision in *Astiana* has "settled the long-standing question of whether a court may dismiss a claim for unjust enrichment as merely duplicative of other statutory or tort claims."  *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1049 (N.D. Cal. 2015).

### 4.    The "economic loss rule" does not bar Plaintiff's tort claims for fraudulent concealment.

"The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  In seeking dismissal of Plaintiff's common law claims for fraudulent concealment, Honda argues that Plaintiff improperly seeks tort

damages for economic losses stemming from a contract breach.  MTD at 24.  Not so.
The claims are based on a breach of duty independent of any contractual promise.

The economic loss rule does not bar tort claims when the challenged conduct
violates a legal duty independent of the contract.  *See Robinson Helicopter Co.*, 34
Cal. 4th at 989-90; *see also NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d
1023, 1028 (E.D. Cal. 2013).  "One example of this is 'where the contract was
fraudulently induced,' in which case the injured party can assert both contract and tort
claims."  *Sherwin-Williams Co. v. JJT, Inc.*, 2014 WL 2587483, at *6 (S.D. Cal. June
10, 2014).  In this regard, material omissions are not subject to the economic loss rule,
at least when they are alleged to be *intentional* rather than *negligent*.  *See NuCal
Foods, Inc.*, 918 F. Supp. 2d at 1031-32.  Here, Plaintiff alleges that Honda knowingly
and deceptively induced her to purchase an Affected Vehicle without full disclosure of
a safety Defect, and but for Honda's intentional non-disclosure, she would not have
leased her vehicle or paid as much for it.  ¶¶ 53-54, 207.  Thus, the economic loss rule
cannot apply here, given that the tort claims arise from a duty to disclose that is
independent of any contractual promise.

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court deny Honda's motion to dismiss.

Dated:  April 18, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP


By */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Lee M. Gordon (SBN 174168)
Elaine T. Byszewski (SBN 222304)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 N. Lake Avenue, Suite 203
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
lee@hbsslaw.com
elaine@hbsslaw.com

LABATON SUCHAROW LLP

Martis Ann Alex (SBN 77903)
Daniel R. Leathers (*pro hac vice*)
Brian R. Morrison (*pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
malex@labaton.com
dleathers@labaton.com
bmorrison@labaton.com

*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2016, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

*/s/ Steve W. Berman*
STEVE W. BERMAN